IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                      No.    CV 16-0343 MV/LAM
                                                                          CR 12-0969 MV

RICHARD E. LUNA,

    Defendant/Movant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendant/Movant's (hereinafter "Defendant") § 2255 Motion [*Doc. 4*],[2] filed on June 24, 2016. Plaintiff/Respondent (hereinafter "the Government") filed a response on August 9, 2016 [*Doc. 8*], and Defendant filed a reply on August 19, 2016 [*Doc. 9*]. On October 14, 2016, this case was reassigned to the undersigned as the pretrial judge. [*Doc. 12*]. On January 25, 2017, United States District Judge Martha Vázquez referred the claims raised in this case to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 15*]. Having considered the

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] Hereinafter, all documents from Case No. CIV-16-0343 cited in this decision will be designated as "*Doc.*" followed by their docket number, and all documents from Case No. CR-12-969 cited in this decision will be designated as "*Cr.Doc.*"

1

motion, response, reply, relevant law, and the record in this case and in Defendant's underlying criminal case contained in Case No. CR-12-969, the undersigned recommends, for the reasons set forth below, that Defendant's § 2255 motion [*Doc. 4*] be **GRANTED in part** and **DENIED in part** and that Defendant be **RESENTENCED**.

### Factual and Procedural Background

On December 5, 2012, pursuant to a Plea Agreement [*Cr.Doc. 42*], Defendant pled guilty to an Indictment [*Cr.Doc. 2*] charging him with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The parties state that Defendant was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which mandates a minimum sentence of 180 months (15 years). *See* [*Doc. 4* at 2] and [*Doc. 8* at 2].[3] The parties state that Defendant was subject to the ACCA based on two prior convictions for residential burglary, and one prior conviction for commercial burglary. *See* [*Doc. 4* at 2] and [*Doc. 8* at 2]. Defendant contends that, without the ACCA designation, he would have been subject to a Sentencing Guidelines range of 100 to 120 months. *See* [*Doc. 4* at 2]. On April 17, 2013, the judge who was then presiding in Defendant's criminal case imposed a 180-month sentence, with 3 years of supervised release. *See* [*Cr.Doc. 53* at 2-3].

In his § 2255 motion, Defendant contends that his prior convictions for residential and commercial burglary no longer qualify as convictions for crimes of violence pursuant to the holding of *Johnson v. United States*, 135 S. Ct. 2551 (2015), and, therefore, cannot be used to enhance his sentence. [*Doc. 4* at 2]. Defendant asks the Court to vacate his ACCA sentence and resentence him. *Id.* at 11.

---

[3] While both parties cite to Defendant's Presentence Report ("PSR"), the PSR has not been filed in either Defendant's civil or criminal cases, and neither party has provided the Court with a copy of the PSR. Nevertheless, since the parties do not dispute the information in the PSR, the Court will rely on the parties' statements in their briefs regarding the content of the PSR.

**Discussion**

Under the ACCA, an individual who violates § 922 (g) (*e.g.*, being a felon in possession of a firearm or ammunition), and who has "three previous convictions . . . for a violent felony or a serious drug offense," will receive a mandatory, minimum 15-year sentence.   18 U.S.C. § 924(e). The statute defines the term "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)   is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .

18 U.S.C. § 924(e)(2)(B)(i)-(ii) (emphasis added).   The emphasized clause is referred to as the "residual clause," and in *Johnson* the Supreme Court held that the residual clause "denies fair notice to defendants and invites arbitrary enforcement by judges," and, therefore, violates the due process clause of the Constitution.   *Johnson*, 135 S.Ct. at 2557.

Defendant contends that his prior convictions for residential and commercial burglary no longer qualify as violent felonies under the residual clause of the ACCA because that clause was found to be unconstitutional in *Johnson*.   [*Doc. 4* at 3].   Defendant further contends that these convictions do not fall under the ACCA's elements, or force, clause because the statute under which he was previously convicted, N.M.S.A. 1978 § 30-16-3, does not contain as an element the use, attempted use, or threatened use of physical force against another person.   *Id.* at 4.   Finally, Defendant contends that his burglary convictions do not fall under the ACCA's enumerated clause because the meanings of "structure" and "entry" at the time of Defendant's convictions were

3

broader than federal, generic law regarding the definitions of those terms. *Id.* at 4-11. Defendant contends that the Court should apply the modified categorical approach (*id.* at 6), and that the charging documents for his burglary convictions do not identify whether he "entered" into a "structure" in a manner recognized by the federal, generic definition of burglary, so those convictions cannot be used to support an ACCA sentence (*id.* at 9-11).

In response, the Government contends that Defendant's convictions for residential and commercial burglary qualify as ACCA-predicate offenses. [*Doc. 8* at 5-10]. The Government contends that the subsection of the burglary statute under which Defendant was convicted for residential burglary, N.M.S.A. § 30-16-3(A), "limits the overbroad statutory alternatives and leaves a conviction under it narrower than a conviction under generic burglary." *Id.* at 5. In addition, the Government contends that the subsection of the burglary statute under which Defendant was convicted for commercial burglary, N.M.S.A. § 30-16-3(B), "contains alternative elements and is a divisible statute, which means the Court may employ the modified categorical approach to determine which alternative element formed the basis of [Defendant's] conviction." *Id.* at 9. Therefore, the Government argues that Defendant's commercial burglary conviction falls under the ACCA's enumerated clause and maintains that Defendant was correctly classified as an armed career criminal. *Id.* at 10.

In reply, Defendant contends that New Mexico's residential burglary statute is broader than the federal, generic definition of burglary because it "encompasses burglaries of uninhabited and unconnected buildings." [*Doc. 9* at 4]. Defendant also contends that New Mexico's commercial burglary statute is broader than the federal, generic definition of burglary because the charging documents for Defendant's commercial burglary conviction do not specify the location

4

of "entry" and do not clearly identify whether Defendant entered a "structure" in a manner recognized by the federal, generic definition.  *Id.* at 7.

Based on the foregoing, the Court must determine whether Defendant's convictions for residential and commercial [4] burglary fall under the enumerated clause of the ACCA, § 924(e)(2)(B)(ii).[5]  To determine whether a past conviction qualifies as one of the offenses enumerated at § 924(e)(2)(B)(ii), courts compare the elements of the crime of conviction with the elements of the federal generic version of the listed offense.  *See Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016).  "To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case."  *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 600-01 (1990)).  A prior conviction qualifies as an ACCA-predicate offense "if its *elements* are the same as, or narrower than, those of the generic offense."  *Id.*  However, "if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary' -- even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries."  *Id.*  The federal, generic definition of burglary is an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599.  Thus, when a burglary statute is broader than the generic definition, then the statute may not be used as an ACCA-qualifying predicate offense under the enumerated clause.

---

[4] The Court uses the terms "commercial" and "non-residential" burglary interchangeably.

[5] The Government does not appear to dispute Defendant's contentions that his burglary convictions do not fall under the "elements" (or "force") clause of the ACCA (§ 924(e)(2)(B)(i)), or that they no longer qualify under the residual clause pursuant to the holding in *Johnson* (§ 924(e)(2)(B)(ii) - "otherwise involves conduct that presents a serious potential risk of physical injury to another").  *See* [*Doc. 8* at 3-10] (addressing only whether or not these convictions fall under the enumerated clause, § 924(e)(2)(B)(ii)).  The Court finds no reason to hold otherwise and will, therefore, focus on whether these convictions fall under the enumerated clause.

*See, e.g., Descamps v. United States*, 133 S.Ct. 2276, 2282-83 (2013) (finding that California's burglary statute, which provides that a "person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary," is broader than federal generic burglary because it criminalizes entering a location, even lawfully, with the intent to steal, whereas generic burglary requires an unlawful or unprivileged entry).

When a statute has a "divisible" structure, whereby it lists elements in the alternative and defines multiple crimes, a court must discern which of the alternative elements listed was necessary for the defendant's conviction. *See Mathis*, 136 S.Ct. at 2249. To do so, courts use a "modified categorical approach," under which a court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (citations omitted). "The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.* When faced with an "alternatively phrased" statute which "enumerates various factual means of committing a single element" (*id.*, citation omitted), a court must "determine whether [the statute's] listed items are elements or means" (*id.* at 2256). "If they are elements, the court should . . . review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." *Id.* (citation omitted). However, if the listed items "are means [of committing a single element], the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution," and "[g]iven ACCA's indifference to how a defendant actually committed a prior offense, the court may ask only whether the *elements* of the state crime and generic offense make the requisite match." *Id.*

To determine whether a statute lists elements or means, a court should look to see if state court decisions are of assistance, as the Supreme Court did in *Mathis* when it looked to an Iowa Supreme Court decision regarding Iowa's burglary law, which held that the various premises listed in the

6

burglary statute at issue were "alternative methods of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* (citing *State of Iowa v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981) (internal quotation marks and brackets omitted). The Supreme Court stated that when "a state court decision definitively answers the question . . . , a sentencing judge need only follow what it says." *Id.* (citation omitted). In addition, the Supreme Court instructs that "the statute on its face may resolve the issue," and that "[i]f statutory alternatives carry different punishments, then . . . they must be elements," but "if a statutory list is drafted to offer illustrative examples, then it includes only a crime's means of commission." *Id.* (citations and internal quotations marks omitted). Finally, if state law fails to provide clear answers, the Supreme Court states that the court may "peek" at the record of a prior conviction itself "for the sole and limited purpose" of determining whether the listed items are means or elements. *Id.* at 2256-57 (citation and internal quotation marks omitted).

> The burglary statute at issue in this case reads:
>
>> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>>
>>> A. Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>>>
>>> B. Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

N.M.S.A. 1978 § 30-16-3. The alternative elements in this statute are separated into subsections A and B, wherein subsection A is burglary of a "dwelling house," a third degree felony, and subsection B is non-residential (or commercial) burglary, a fourth degree felony. Because this statute is divisible into these two elements, the Court may examine the state court documents that were used to convict Defendant in order to determine whether Defendant was convicted under subsection A or

7

subsection B.  *See Mathis*, 136 S.Ct. at 2249 (describing the modified categorical approach). Defendant states that his charging documents show that he was charged with two counts of residential burglary under § 30-16-3(A) (*see Doc. 4* at 9-10, citing Exhibits A and B), and one count of commercial burglary under § 30-16-3(B) (*see id.* at 10, citing Exhibit C).

### *1. Residential Burglary Convictions*

Defendant contends that his residential burglary convictions are broader than the federal, generic definition because the charging documents for those crimes do not specify how Defendant accomplished the "entry" or what the "structure" was that Defendant entered.  *See* [*Doc. 4* at 9-10]. In his reply brief, Defendant contends that "[t]he Tenth Circuit has defined the generic guideline offense of burglary of a dwelling as the burglary of any 'enclosed space that is used or intended for use as a human habitation.'"  [*Doc. 9* at 3] (quoting *United States v. Rivera-Oros*, 590 F.3d 1123, 1132 (10th Cir. 2009)).  Defendant notes that New Mexico has defined "dwelling house" as "any structure, any part of which is customarily used as living quarters" (*id.*, quoting N.M. UJI 14-1631, N.M.R.A.), and that this definition has been held to include part of a dwelling that has no opening to the occupied structure (*see id.*, citing *State v. Lara*, 1978-NMCA-112, ¶ 6, 92 N.M. 274, 587 P.2d 52).  Therefore, Defendant contends that New Mexico's residential burglary statute is broader than the federal, generic definition "because New Mexico residential burglary encompasses burglaries of uninhabited and unconnected buildings."  *Id.* at 4.

The Court finds that Defendant's contention that the definition of residential burglary in § 30-16-3(A) is broader than the federal, generic definition is without merit.  First, the Court notes that Defendant's reliance on *Rivera-Oros* for the federal, generic definition is misplaced because *Rivera-Oros* defined the term "burglary of a dwelling" in the context of the Sentencing Guidelines -- not the ACCA.  *See* 590 F.3d at 1128-29 (explaining that *Taylor's* definition of generic burglary in the context of the ACCA does not govern when interpreting the meaning of the more specific

8

phrase "burglary of a dwelling" in the Sentencing Guidelines). Instead, in this case the Court must look at the federal, generic definition of burglary as it applies to the ACCA, § 924(e), which is set forth in *Taylor* as "an unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599.

The Court finds that New Mexico's definition of residential burglary in § 30-16-3(A) is not broader than the federal, generic definition. Section 30-16-3(A) prohibits "enter[ing] [without authorization] a dwelling house with intent to commit any felony or theft therein," and New Mexico's criminal jury instructions define "dwelling" as "any structure, any part of which is customarily used as living quarters" (N.M. UJI 14-1631, N.M.R.A.). Cases in New Mexico have held that a "dwelling" under § 30-16-3(A) includes a garage that is attached but not internally connected to a home. *See Lara*, 1978-NMCA-112, ¶¶ 3-6 (finding that a garage was part of a "dwelling" because it shared a wall with the home used as living quarters, even though it did not contain a door into the home). However, a "dwelling" in New Mexico does not include a detached, non-contiguous garage. *See State v. Ross*, 1983-NMCA-065, ¶ 11, 100 N.M. 48, 665 P.2d 310 (holding that a detached and non-contiguous garage was not part of the dwelling house). The Court, therefore, finds that New Mexico's definition of residential burglary is not broader than the federal, generic definition because it is limited to burglary of dwellings used as living quarters and particular structures that are attached to such dwellings, which is narrower than any "building or structure" used for any purpose. While Defendant contends that New Mexico's residential burglary is broader than the federal, generic definition because it "encompasses burglaries of uninhabited and unconnected buildings" (*Doc. 9* at 4), the federal, generic definition set forth in *Taylor* encompasses burglaries of uninhabited and unconnected buildings as well, so this contention is without merit. In addition, Defendant is incorrect in stating that New Mexico's residential burglary encompasses unconnected buildings because the New Mexico Court of Appeals in *Ross* held that a detached garage was not part of a "dwelling" under

9

§ 30-16-3(A). For these reasons, the Court recommends denying Defendant's contentions that his residential burglary convictions do not fall under the ACCA's enumerated clause.

### 2.     *Commercial Burglary Conviction*

Next, Defendant contends that his conviction for commercial burglary under § 30-16-3(B) does not fall under the enumerated clause of the ACCA because it is broader than the federal, generic definition. *See* [*Doc. 4* at 10]. Again, the federal, generic definition of burglary is "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. Since the New Mexico definition of non-residential burglary in § 30-16-3(B) encompasses unlawful entries into vehicles, watercrafts or aircrafts, which is more than just "buildings or other structures," the Court finds that New Mexico's non-residential burglary statute is broader than the federal, generic definition.

The Government contends that the Court's analysis does not end here, and asks the Court to find that subsection B is further divisible and, thus, satisfies the federal, generic burglary definition. *See* [*Doc. 8* at 7-10]. The Government admits that it "has been unable to locate any New Mexico state case addressing whether the alternatives listed in § 30-16-3(B) are elements or means of committing commercial burglary," and concedes that the statutory penalties are the same for any of the alternatives listed in subsection B. *Id.* at 7. Nevertheless, the Government contends that subsection B contains a list of elements, not "illustrative examples" (or means) to commit the offense, and contends that the Eleventh Circuit case of *United States v. Howard*, 742 F.3d 1334 (11th Cir. 2014) supports its contention. *See id.* at 8. In *Howard*, the Alabama statute at issue provided that "a person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein," and Alabama law defined "building" with a list that "include[d] any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein." *See Howard*, 742 F.3d at 1348 (citations omitted). The Eleventh Circuit looked to *Descamps*, which

10

explains that courts must determine "whether the 'statute sets out one or more elements of the offense in the alternative -- for example, stating that burglary involves entry into a building *or* an automobile'" (*Howard*, 742 F.3d at 1348, quoting *Descamps*, 133 S.Ct. at 2281), and concluded that "nothing in the Alabama statute suggests its definition of 'building' is drafted in the alternative," but instead "includes a non-exhaustive list of things that fall under that definition'" (*Howard*, 742 F.3d at 1348).  The Eleventh Circuit found that the use of the word "includes" before the alternatives was significant because it indicated a "non-exhaustive list of examples to clarify the meaning of the term," not alternative elements.  *Id.* (citation and internal quotation marks omitted).  Contrasting the statute in *Howard* to New Mexico's commercial burglary statute, the Government contends that "§ 30-16-3(B) contains a definitive list of items which effectively creates several different crimes" and "sets out one or more elements of the offense in the alternative" rather than "a mere list of 'illustrative examples'" and, therefore, "§ 30-16-3(B) contains alternative elements and is a divisible statute, which means the Court may employ the modified categorical approach to determine which alternative element formed the basis of [Defendant's] conviction."  [*Doc. 8* at 9].  The Government contends that the charging documents for Defendant's commercial burglary conviction show that Defendant was convicted for burglary of a structure and, therefore, Defendant's conviction is consistent with the definition of generic burglary and constitutes an enumerated violent felony under the ACCA.  *See id.* at 9-10.

For the following reasons, the Court finds that subsection B is not divisible.  First, the Court finds that state law supports a finding that subsection B is not divisible.  The New Mexico Supreme Court has explained that subsection B does not provide a finite list, and that § 30-16-3 "divides the crime [of burglary] into different grades, with the entry of a dwelling being a third degree felony while entry into any of the other enumerated objects being a fourth degree felony."  *See New Mexico v. Office of the Public Defender ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, __ N.M. __, 285 P.3d 622.  The fact that the New Mexico Supreme Court described only two "grades" between subsections A and B indicates that subsection B is not divisible.

Second, the plain text of the statute indicates that it is not divisible. As conceded by the Government (*see Doc. 8* at 7), the statutory penalties are the same for any of the alternatives listed in subsection B, which indicates that it contains a list of means, not elements. *See Mathis*, 136 S. Ct. at 2256 (explaining that courts should look at the plain language of the statute, and that, if statutory alternatives carry different punishments, then they must be elements). In addition, the plain language of the statute indicates that it is divisible into only subsections A and B, and that subsection B is not further divisible, because the state legislature separated residential burglary in subsection A from all other burglaries in subsection B.

Third, even if the statute is not clear, the correlative uniform jury instruction indicates that subsection B contains alternative means, not elements. As the Supreme Court explained in *Mathis*, the Court can take a "peek" at the record documents "for the sole and limited purpose of determining whether the listed items are elements of [as opposed to means of committing] the offense." 136 S.Ct. at 2257. Thus, if the charging document and correlative jury instructions both use an umbrella term like "premises," or both list the alternatives together, *e.g.*, "building, structure, or vehicle," such construction would be "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257. Conversely, if the charging document and correlative jury instructions both reference "one alternative term to the exclusion of all others," that could indicate "that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* Here, the correlative jury instruction for burglary lists all of the alternatives of "[vehicle] [watercraft] [aircraft] [dwelling] [or] [other structure]," which indicates that the alternatives are only possible means of commission, and not elements that the prosecutor must prove to a jury beyond a reasonable doubt. *See* UJI 14-1630 N.M.R.A. Furthermore, all of these alternative means are listed in "each of the following elements of the crime" that "the state must prove beyond a reasonable doubt." UJI 14-1630 N.M.R.A. at ¶¶ 1 and 2. In addition, UJI 14-1630 N.M.R.A. only treats the term "dwelling" differently from the other

places of commission of the offense by instructing the courts to give UJI 14-1631, which defines "dwelling house," only if the charge is burglary of a dwelling house. The Court, therefore, finds that this jury instruction supports a finding that each of the alternatives in subsection B provides alternative methods of committing the single crime of non-residential burglary. *See Mathis*, 136 S.Ct. at 2250 (holding that "those listed locations are not alternative elements, going toward the creation of separate crimes[,] [but, t]o the contrary, they lay out alternative ways of satisfying a single locational element . . . serv[ing] as an alternative method of committing the single crime of burglary") (citation, internal quotation marks, and brackets omitted).

Finally, the Court rejects the Government's attempt to distinguish the holding of *Howard*. *See* [*Doc. 8* at 7-9]. The Court finds that the term in subsection B "or other structure" is similar to the word "includes" in the statute in *Howard*, and that both of these terms indicate non-exhaustive lists of alternative means by which the offense may be committed. The Court is not persuaded by the Government's contention that subsection B contains a definitive, finite list of items that creates several different crimes.

For the reasons stated above, the Court finds that § 30-16-3(B) is divisible into subsections A (residential burglary) and B (non-residential burglary), but that subsection B is not further divisible. Therefore, the Court finds that it would not be proper to apply the modified categorical approach to the alternatives listed in subsection B to determine whether Defendant's prior conviction rested on facts that satisfy the federal, generic definition. *See Mathis*, 136 S.Ct. at 2254 (explaining that the application of the modified categorical approach "serves -- and serves solely -- as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque," but it "is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense") (citation omitted). Because subsection B is broader than the federal generic definition of burglary, Defendant's conviction for commercial

burglary may not be used as an ACCA-predicate offense under the enumerated clause, thus leaving Defendant with only two prior violent felony convictions instead of the three that the ACCA requires for enhancing a sentence. Therefore, the Court recommends vacating Defendant's sentence and resentencing Defendant absent the ACCA-enhancement.

### Conclusion

**IT IS THEREFORE RECOMMENDED**, for the reasons stated above, that Defendant's § 2255 motion [*Doc. 4*] be **GRANTED** as to his conviction for commercial burglary and **DENIED** as to his convictions for residential burglary, that the Court **VACATE** Defendant's sentence, **ORDER** an updated sentencing memorandum, and set this case for resentencing as soon as possible.

*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**