IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.

RICHARD ELIZARDO LUNA,

    Defendant/Movant.

No.   16-cv-0343 MV-KRS
          12-cr-0969 MV

## SECOND AMENDED PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

Richard Elizardo Luna, presently incarcerated at FCI Florence, seeks review of his sentence under 28 U.SC. § 2255 in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. __, 135 S. Ct 2551 (2015). In his motion to vacate, Luna contends that his three convictions for burglary under Section 30-16-3(A) and (B) of the New Mexico Statutes no longer qualify as violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), the basis used to enhance his sentence to 180 months. [Docs. 57 & 61]. The Government has filed a response in opposition [Doc. 64], and Luna a reply [Doc. 66]. The parties have also on two occasions submitted objections, responses, and replies to earlier recommendations from this Court's predecessor. [*See* Docs. 70, 72, 76, 77, & 80]. Acting under its inherent authority to reconsider previous rulings and an order of reference from United States District Judge Martha Vazquez to conduct proceedings, *see* 28 U.S.C. § 636, the Court has considered the parties' submissions and now recommends Luna's motion be granted and he be resentenced.

## I. BACKGROUND

### A. <u>Facts Underlying Conviction</u>

On April 24, 2012, a federal grand jury returned a single-count indictment charging Luna with being a felon in possession of a firearm contrary to Title 18, Sections 922(g)(1) and 924(a)(2) of the United States Code. [Doc. 2]. The charging document listed three prior felonies as the basis for the offense, including two convictions for residential burglary and one for larceny. [Doc. 2, ¶¶1-3]. On December 5, 2012, Luna pleaded guilty to the charge and executed a formal plea agreement. [Doc. 42]. United States Magistrate Judge Robert Hayes Scott accepted the plea, and the matter was set for sentencing. [Doc. 43].

The factual basis for Luna's commission of the offense is set forth in the plea agreement. [Doc. 42, ¶5]. Luna admitted that in July of 2012, he knowingly possessed a Smith & Wesson model 5903, 10 rounds of Federal brand 9 millimeter cartridges and a single Winchester brand 9 millimeter cartridge. [Doc. 42, ¶9]. Luna also agreed that "the Court may rely on any of these facts, as well as facts in the presentence report to determine the Defendant's sentence, including but not limited to, the advisory guideline offense level." [Doc. 42, ¶10]. The parties nonetheless proposed a sentence of 180 months as representing the appropriate amount of incarceration in light of the crime's nature and severity. [Doc. 42, ¶5].

The United States Probation Office prepared a report in advance of Luna's sentencing. [CV Doc. 21]. This Presentence Report ("PSR") noted that Luna "has at least three prior convictions for a violent felony, or drug offense, or both, which were committed on different occasions." [CV Doc. 21, p. 11]. As a result, the Probation Office determined that Luna "is an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)." [*Id.*]. Although the PSR indicated Luna had convictions for seven drug or violent

felonies, the Probation Office relied on three: a June 12, 1987 conviction for residential burglary in New Mexico's Second Judicial District; an August 16, 1996 conviction for the same crime in the same district; and a December 15, 2008 conviction for commercial burglary in the same district. [*Id.*]. In a separate section detailing Luna's full criminal history, the PSR documented a total of four adult convictions for residential burglary, among numerous others. [*Id.*, pp. 12-29].

On March 22, 2013, Luna filed objections to the PSR. [Doc. 47]. In relevant part, he challenged his conviction for "commercial burglary . . . as qualifying him as an Armed Career Criminal" for sentencing purposes. [Doc. 47, pp. 2-3]. Specifically, Luna argued, that conviction is not a violent felony under the categorical approach and facts of the offense. [Doc. 47, pp. 3-6]. The Government responded to the objection and asserted that there were many other residential burglary convictions that would support the ACCA enhancement, and generic commercial burglary is a qualifying violent felony at any rate. [Doc. 49, pp. 4-5]. On April 22, 2013, United States District Judge Nancy Freudenthal adopted the PSR findings and sentenced Luna to 180 months incarceration, the minimum required by the ACCA. [Docs. 52; 53].

### B. Procedural Facts

On April 25, 2016, Luna filed the instant motion pursuant to 28 U.S.C. § 2255 and *Johnson* challenging the Court's use of his burglary conviction under N.M. Stat. Ann. § 30-16-3(B) as a basis for the ACAA enhancement. [Doc. 57]. The Court subsequently appointed counsel to assist him. [Doc. 59]. Thereafter, the Government filed a response in opposition [Doc. 64], and Luna a reply [Doc. 66]. United States District Judge Martha Vazquez referred the matter to this Court's predecessor, United States Magistrate Judge Lourdes Martinez, on January 25, 2017 for proposed findings and a recommended disposition ("PFRD"). [CV Doc. 15].

On February 14, 2017, Judge Martinez issued the first of two PFRDs. [Doc. 70] In the first report, Judge Martinez recommended resentencing. [Doc. 70, p. 14]. She reasoned that under the modified categorical approach, Luna's conviction for commercial burglary was not an enumerated violent felony. [Doc. 70, pp. 10-14]. Because that offense did not qualify, there were only two permissible prior convictions under the ACCA and the 15 year minimum was no longer appropriate. [Doc. 70, pp. 13-14].

Following objections [Doc. 72], Judge Martinez issued a second PFRD on April 25, 2017 reconsidering her earlier recommendation. [Doc. 76]. Based on Luna's substantial criminal history that included additional convictions for residential burglary under Section 30-16-3(A) as outlined in a separate section of the PSR that had only then become available to the Court, Judge Martinez recommended that Luna's motion to vacate his sentence be denied. [Doc. 76, p. 3]. Luna timely objected, urging Judge Vazquez not to adopt the recommendation. [Doc. 77, p. 12]. Luna asserted that the Government waived reliance on the other residential burglaries in the PSR's recitation of his criminal history because those were *not* used in actually enhancing his sentence—only the two residential burglaries and the single commercial burglary formed the predicate under the ACCA. [Doc. 77, pp. 5-8].

The Government disagreed in an amended response to Luna's objection. [Doc. 79]. It insisted the Eleventh Circuit precedent Luna cited does not support his waiver contention and, at any rate, the crime of commercial burglary under N.M. Stat. Ann. § 30-16-3(B) qualifies post *Johnson* as one of the violent felonies enumerated in the ACCA. [Doc. 78, pp 3-4]. Luna filed a

reply[1] on June 7, 2017 reiterating his waiver argument. [Doc. 80]. On June 13, 2017, Judge Vazquez referred the matter to this Court. [CV Doc. 28].

## II. APPLICABLE LAW

An offense under Section 922(1) for being a felon in possession carries a maximum prison term of ten years so long as the offender has not been convicted of three previous violent felonies or serious drug offenses. *See* 18 U.S.C. § 924(a)(2) & (e)(1). If the defendant has the three prior convictions, the ACCA imposes a *minimum* sentence of 15 years' incarceration. At the time of Luna's conviction, the ACCA defined violent felonies as an offense "punishable by more than a year," involving "as an element the use, attempted use, or threatened use of force," or the crime is "burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The Court enhanced Luna's sentence under the ACCA because he was twice convicted for residential burglary under N.M. Stat. Ann. § 30-16-3(A) and once for commercial burglary contrary to N.M. Stat. Ann. § 30-16-3(B).

Two years after Luna's sentencing, the United States Supreme Court held that the ACCA's "residual clause"—the one that allows an ACCA enhancement for crimes "otherwise involving conduct that presents a serious risk of physical injury"— is unconstitutionally vague, but left intact the enumerated-crimes provision (burglary, arson, extortion, crimes involving explosives). *Johnson*, 135 S. Ct. at 2256. *Johnson*'s holding is retroactive, *see Welch v. United States*, __ U.S. __, __, 136 S. Ct. 1257, 1268 (2016), and Luna asserts that the three burglary convictions upon which the Court based the enhancement do not survive *Johnson*'s mandate. He is partially correct, and for that reason the Court recommends he be resentenced.

---

[1] Federal Rule of Civil Procedure 72 does not expressly permit a reply. Because the issue of waiver is well presented at this point, it is of little consequence but the Court will consider it nonetheless.

## III. ANALYSIS

Whether a conviction for burglary qualifies as a violent felony post *Johnson* requires the Court to compare that offense under New Mexico law to the federal "generic" version of the same crime. *See Taylor v. United States*, 495 U.S. 575, 598 (1990). Under this "categorical approach," the Court focuses "solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Mathis v. United States*, __U.S.__, __, 136 S. Ct. 2243, 2248 (2016). If the elements of New Mexico burglary—or "things the prosecution must prove to sustain a conviction"— are broader than the federal generic counterpart, meaning they "cover any more conduct than the generic offense," then New Mexico burglary cannot be used to enhance a sentence imposed under the ACCA. *Id.*

If New Mexico's burglary statute is "divisible" in that it contains, for example, discrete subparagraphs describing in essence "multiple crimes" or alternatives with different punishments, then the Court is obligated to employ the modified categorical approach. *Id.* Under this framework, the Court examines the defendant's underlying charging and sentencing records to determine the type of burglary under New Mexico law that was the basis for Luna's conviction. *Shepard v. United States*, 544 U. S. 13, 26 (2005) (allowing review of a "limited class" of documents such as the indictment, jury instructions, and/or plea records to determine under which part of a divisible criminal statute a defendant was convicted). After determining the crime is divisible, the Court then applies the categorical approach described above. *See id.*

## A. Application of Categorical and Modified Categorical Approaches.

Two points require less analysis in this case. First, New Mexico's burglary statute is divisible. Second, Luna's two convictions for residential burglary qualify as violent felonies under the ACCA.

### 1. *Divisibility of New Mexico's burglary statute*

Section 30-16-3 of the New Mexico Statutes defines "[b]urglary . . . [as] the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, moveable or immoveable, with the intent to commit any felony or theft therein." The statute then proscribes two categories of conduct, burglary of a dwelling and burglary of anything else:

> A. Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony;
> B. Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, moveable or immoveable, with the intent to commit a crime therein is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-16-3(A) & (B). Because Subsections A and B list "elements in the alternative" and ascribe different punishments to each, burglary in New Mexico is divisible into residential (subsection A) and non-residential (subsection B). *Mathis*, 136 S. Ct. at 2249.

Courts considering Section 30-16-3 under the ACCA have reached the same conclusion. *See*, *e.g., United States v. Alires*, 2017 U.S. Dist. LEXIS 65582, *42 (D.N.M. May 1, 2017); *Turrieta v. United States*, 2016 U.S. Dist. LEXIS 151593, *5-6 (D.N.M. Oct. 28, 2016) (burglary in New Mexico "is divisible into two separate crimes: Subsection (A), the burglary of a dwelling house; and Subsection (B), the burglary of a vehicle, watercraft, aircraft, or other structure") (citing *State v. Ervin*, 1981-NMCA-068, ¶ 3, 96 N.M. 366, 630 P.2d 765); *United States v. Lemos*, 2017 U.S. Dist. LEXIS 58120, *14 (D.N.M. Apr. 17, 2017) (same). In sum, New Mexico's burglary statute is divisible and, under the modified categorical approach, the charging

documents reveal Luna was convicted of two offenses of residential burglary under subsection A and one offense under subsection B for commercial burglary.

### 2. *Residential burglary*

The Court must determine whether residential burglary under Subsection A proscribes conduct broader or narrower than the generic offense under federal law. *See United States v. Titties*, 852 F.3d 1257, 1266 (10th Cir. 2017) (explaining that "[f]or courts faced with a divisible statute, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction" and "[o]nce the relevant elements are identified, the court applies the categorical approach") (citations omitted). The Court concludes that Section 30-16-3(A) proscribes conduct narrower than the generic offense under federal law and therefore qualifies as a violent felony for purposes of the ACCA despite Luna's argument to the contrary.

Federal law generically defines burglary as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Because residential burglary in New Mexico only allows conviction if the prosecutor proves beyond a reasonable doubt that the defendant entered into a "dwelling house," it is narrower than the federal generic version of burglary that proscribes entry into a dwelling *or* structure. *Compare* §30-16-3(A) ("Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony") *with United States v. Silva*, 608 F.3d 663, 668 (10th Cir. 2010) (explaining that the term "structure" in the federal generic definition means any "enclosed space or building, . . . not in a boat or motor vehicle").

Luna's contention that federal law defines burglary of a dwelling as burglary of "an enclosed space that is used or intended for use as a human habitation" and his reliance on *United*

*States v. Rivera-Oros*, 590 F.3d 1123, 1132 (10th Cir. 2009) for that proposition, misses the mark because *Rivera-Oros* specifically defined federal burglary for purposes of the Sentencing Guidelines and eschewed application under the ACCA. *See id.* More compelling, the federal courts that have addressed residential burglary under New Mexico law in the context of the ACCA have roundly concluded that it is narrower than its federal counterpart. *See*, *e.g.*, *Alires*, 2017 U.S. Dist. LEXIS 65582, at *55 (concluding "that NMSA 1978, § 30-16-3(A) is the same as, or narrower than, those of the generic offense—here, that offense being burglary."); *United States v. Marquez*, 2017 U.S. Dist. LEXIS 68938, *24 (D.N.M. May 5, 2017) ("[B]urglary of a dwelling under § 30-16-3(A) meets the generic definition of 'burglary.'"); *Sanchez v. United States*, 2017 U.S. Dist. LEXIS 65460, *35 (D.N.M. Apr. 30, 2017) ("Sanchez has not shown that there is a realistic probability that New Mexico residential burglary could include conduct that falls outside the generic definition of burglary.").

The Court finds no reason to depart from these cases. Under the modified categorical approach, Section 30-16-3(A), residential burglary, is narrower than generic burglary according to federal law. Luna's two convictions for residential burglary under Section 30-16-3(A) each constitute a violent felony for purposes of enhancement under the ACCA.

### B. Non-Residential Burglary Under the Modified Categorical Approach.

Whether Luna's conviction under Section 30-16-3(B) for commercial burglary qualifies as an enumerated violent felony under the ACCA is not as straightforward. The Court concludes this conviction does not qualify and, contrary to the Government's position, is not further divisible so as to allow the Court to examine Luna's conviction in more detail.

### 1. *Non-residential burglary under New Mexico law*

Generic burglary under federal law requires the unlawful entry of a structure with the intent to commit a crime therein. Non-residential burglary under state law proscribes entry into "any vehicle, watercraft, aircraft or other structure, moveable or immovable, with the intent to commit a crime therein." N.M. Stat. Ann. § 30-16-3(B). As the case law commands, the Court must determine whether non-residential burglary is broader than its federal counterpart under the categorical approach. If it is, then it may not be used to enhance Luna's sentence.

Facially, Subsection B appears broader: federal law requires entry in to a structure while New Mexico's statute permits a conviction for entry into a vehicle, watercraft, aircraft in additional to moveable and immovable structures. *Compare Taylor*, 495 U.S. at 598 *with* N.M. Stat. Ann. § 30-16-3(B). The underlying assumption, of course, is that the term "structure" in federal law would not include a vehicle, watercraft, or aircraft, or something moveable, thus making subsection B broader. The assumption is correct.

Generic burglary, as the United States Supreme Court has interpreted it, excludes commission of that offense in vehicles, watercraft, aircraft, and moveable structures. *See Taylor*, 495 U.S. at 599 (generic burglary's locational element does not include "automobiles"); *Shepard*, 544 U.S. 13, 15-16 (2005); (generic burglary is limited to burglaries "committed in a building or enclosed space . . . not in a boat or motor vehicle"). Thus, the federal definition of "structure" is not expansive enough to reach all the alternatives that New Mexico law would allow under Subsection B. It therefore embraces *more*, not *less*, conduct than the generic crime of burglary and may not be used under the ACCA to enhance Luna's sentence. *See Mathis*, 136 S. Ct. at 2250 (holding that Iowa burglary statute that encompassed "any building, structure, [or]

*United States v. Luna*
*Second Amended PFRD*
Page **10** of **16**

land, water, or air vehicle" was broader than the federal generic version and could not be used under the ACCA).

The Government does not seriously disagree with this reasoning. Instead, it argues that the Court may peek behind Luna's conviction to see that it was, in fact, for a commercial building. Since a commercial building is in line with the federal generic, it surmises, Luna's offense qualifies. The problem is, and the Government concedes, the analysis turns on whether, Subsection B is itself further divisible.

### 2. *Divisibility of non-residential burglary under New Mexico law*

The Court is permitted to look at the nature of Luna's convictions under the modified categorical approach only because New Mexico's burglary statute has two discrete subsections, A and B, that describe separately punishable crimes. Once the Court determines divisibility, as it did here, it must then again apply a pure categorical approach. *See Titties*, 852 F.3d at 1266. The only way the Court can further review the specifics of Luna's offense under Subsection B is if that provision is further divisible. It is not.

The *sine qua non* of the analysis is whether Subsection B describes different means (or examples) of committing the same crime or, in essence, identifies another offense carrying a different punishment. The structure of the New Mexico's burglary statute is relatively straightforward. Burglary of a dwelling is punishable as a third degree felony (Subsection A); and all other types of non-residential burglary are punishable as a fourth-degree felony (Subsection B). In other words, those are the only two types of burglary in New Mexico. As an illustration of the second type, the New Mexico legislature has provided non-exclusive examples such an aircraft, watercraft, and vehicles. If there was any doubt these were simply examples and not separate offenses, Subsection B includes all other moveable or non-moveable structures,

meaning a whole range of potential conduct could be used for a conviction for the same violation of Subsection B. *See Titties*, 852 F.3d at 1267 (explaining that "[i]f the listed items are alternative means of satisfying an element [of the crime], then the [subsection] is not divisible and the categorical approach must be applied") (citation omitted). Thus, Subsection B is not further divisible.

Post *Johnson* case law has reached the same conclusion. *See, e.g., Lemos*, 2017 U.S. Dist. LEXIS 58120, at *20 (concluding that Subsection B "is not divisible, is broader than generic burglary, and is therefore not an enumerated violent felony under the ACCA"); *United States v. Harris*, 2017 U.S. Dist. LEXIS 59627, *6 (D.N.M. Feb. 1, 2017) (explaining that the court is "not persuaded by the United States's contention that paragraph (B) defines multiple crimes and lists alternative elements. Rather, paragraph (B) defines one crime[.]"). The Court finds no reason to depart from these cases. Luna's conviction under Subsection B does not qualify as a violent felony and may not be used as a predicate conviction for enhancing a sentence pursuant to the ACCA.

### C. <u>Need for Resentencing</u>

Although Luna's conviction under Section 30-16-3(B) may not be used to enhance his sentence, the Government has maintained throughout the proceedings that Luna's lengthy criminal history shows other permissible convictions for residential burglary that survive *Johnson*'s abolition of the ACCA's residual clause and that serve as predicate offenses to support the existing enhancement of Luna's sentence pursuant to the ACCA. The Court disagrees and determines fundamental notions of due process and fair play require resentencing.

Consistent with the position of the Government and the Probation Office, the Court recognizes that Luna has been convicted of other residential burglaries. Under the criminal

history section of the PSR, Luna was convicted of at least two other offenses that are not listed in the ACCA portion of the PSR. Despite Luna's protestation to the contrary, those other two convictions for residential burglary appear to qualify under the ACCA as violent felonies post *Johnson* as explained above. The problem is, however, neither the Government nor the Probation Office told Luna prior to his sentencing hearing that they would rely on these other convictions to enhance his sentence under the ACCA.

Examining the record, the indictment lists two burglary offenses and one for larceny as the predicate offenses to charge Luna as a felon in possession. The three prior convictions listed in the indictment are not the same as those identified in the PSR as the basis for increasing Luna's sentence to 180 months as an armed career criminal. Paragraph 28 of the PSR, entitled "Chapter Four Enhancement," claims Luna has "seven violent felonies" and therefore "subject to an enhanced sentence under . . . 18 U.S.C. § 924(a)." However, Paragraph 28 only describes the factual predicate for three prior convictions, one of which is the commercial burglary conviction that does not now meet the post *Johnson* test. The criminal history portion of the PSR also shows that the Probation Office had not, in many instances, received confirmation of the details of Luna's past convictions that would substantiate the full nature of the crimes.

To be fair, Luna could have objected to the PSR's criminal history section. His attorney certainly filed written objections to the use of the commercial burglary conviction as a predicate for enhancement under the ACCA. The Court is also cognizant of the fact that the Government responded to the objections and pointed to the PSR's listing of other convictions for residential burglary as rendering Luna's challenge pointless and that Luna's plea agreement indicated his entire criminal history could be used to enhance his sentence.

In terms of fair play, however, the record before the Court does not show how, if at all, the sentencing judge resolved Luna's objection or whether the judge considered the other convictions for residential burglary in enhancing Luna's sentence. More fundamentally, Luna could not have anticipated at sentencing that the law would shift in 2016 to make specifically challenging his criminal history necessary to avoid the use of prior convictions as a basis for his sentence under the ACCA. Indeed, his history is so lengthy that even if he were successful on a challenge to some, it may well have made *no* difference to the level the Sentencing Guidelines would impose for the total number of crimes (as opposed to the ACCA determination).

The essence of due process is the right to be heard in a *meaningful* way at a *meaningful* time. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Court does not doubt that Luna was heard throughout his criminal case in a meaningful way, only that in terms of *Johnson*'s watershed ruling, his ability to raise objections to the remainder of the criminal history not ostensibly relied on in enhancing his sentence under the ACCA, could not have been meaningful.

Courts that have considered due process in this context have suggested the PSR's reliance on the criminal history section to supplement the ACCA-enhancement portion where *Johnson* no longer is satisfied may be problematic. *See McCarthan v. Warden FCC Coleman-Medium*, 811 F.3d 1237 (11th Cir. 2016), *vacated sub nom on other grounds*, *McCarthan v. Dir. Of Goodwill Indus.-Suncoast*, 851 F.3d 1076 (2017) (en banc). In *McCarthan*, a panel of the Eleventh Circuit examined whether 28 U.S.C. Section 2255's "savings clause" would allow the habeas petitioner another round of collateral review of his sentence. In so doing, the Eleventh Circuit engaged in a merits-type analysis and addressed the propriety of reliance on other post *Johnson* qualifying convictions from the PSR.

The court of appeals decided it was proper. The court, however, made two important observations. First, the "PSR and the sentencing court should specifically identify which of a defendant's prior convictions qualify a defendant for an enhanced ACCA sentence." *McCarthan*, 811 F.3d at 1253. Failure to do so, the court reasoned, deprives a criminal defendant of notice of "the specific convictions on which an ACCA enhancement is recommended and imposed," which "would raise serious due-process concerns." *Id.* Second, where a criminal defendant does not object to the PSR's failure to identify which of his many convictions qualify under the ACCA, then he may not complain later. *See id.*

In contrast to *McCarthan*, the PSR in Luna's case specifically identified three convictions that formed the basis of the ACCA enhancement. One of those prior convictions no longer qualifies as a legitimate predicate for increasing Luna's sentence. Thus, the general observation from *McCarthan* has some persuasion—that the defendant must receive notice of all of the prior convictions to be used under the ACCA.

Only one other case in this District appears to have examined the need for resentencing where other convictions from the criminal history section would qualify under the ACCA post *Johnson*. In *United States v. Garcia*, 2017 U.S. Dist. LEXIS 13250, *62 (D.N.M. Jan. 31, 2017), the court "agree[d] . . . that *McCarthan* does not support a finding that the United States waived reliance on Garcia's robbery conviction (set forth in the criminal history section, but not the ACCA portion of the PSR) to establish his ACCA eligibility." In concluding that the defendant had sufficient notice of the basis for the enhancement, however, the court noted the government filed a "Notice," after the PSR was disclosed, identifying the offenses omitted in the PSR's ACCA section as those it would use to seek an enhanced sentence under the ACCA. *See id.* In addition, the sentencing judge recited that he had relied on the PSR as a whole, considered

the specific factors from the Sentencing Guidelines, and announced on the record that the defendant was a six-time convicted felon, which necessarily addressed the omitted offense.

The type of notice in *Garcia* is not present on this record. There is no filed notice to seek an enhanced sentence on the basis of the other residential burglaries. There is no indication that the sentencing judge specifically contemplated the issue and made a ruling. Without this information, it does not appear Luna received adequate notice especially in light of the fundamental change in the law. Luna asserts the Government has forever waived the issue because it did not object to the sentencing judge's reliance on fewer than all of the ACCA qualifying convictions. The Court is not persuaded on the record before it and does not go as far as to say that the Government is barred from raising the other offenses upon resentencing—only that Luna should have the opportunity to challenge the other convictions with the benefit of now understanding *Johnson*'s requirements. The Court therefore recommends Luna be resentenced.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Luna's motion under 28 U.S.C. § 2255 [CV Docs. 1 & 4; Docs. 57 & 61] be granted and that Luna be resentenced.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.